### R. D. HUDSON v. THE STATE.

No. 2378. Decided February 5, 1902.

**1.—Murder—Insulting Conduct Toward Female Relative—Charge.**

On a trial for murder, where the defense relied on was insulting conduct of deceased toward a female relative, and while the court had substantially charged, as to manslaughter, that mere lapse of time between the receiving information of such insults and the time of killing would not be a material consideration, still, in view of the fact that the evidence presented manslaughter also upon sudden passion, the court should further have charged the jury that mere lapse of time between the formation of the design to kill and the killing would not, of itself, show that defendant was not actuated by such passion as rendered his mind incapable of cool reflection at the time of the killing. The two phases should have been clearly and explicitly defined.

**2.—Same.**

On a trial for murder, where the defense relied on was insulting conduct to a female relative, the charge upon manslaughter should explicitly instruct that whether deceased had offered such insults to the female relative, or whether he had slandered her or not, would be immaterial if the jury believed from the evidence that defendant thought deceased had been guilty of such slander or insulting conduct.

**3.—Murder—Evidence—Acts, Declarations and Threats of a Coconspirator.**

On a trial for murder, where the evidence shows a conspiracy between defendant and another party to commit the crime, the acts and declarations and

threats of the coconspirator prior to the killing, though made in the absence of defendant and before the conspiracy was formed, are admissible in evidence against the defendant to show the animus, object, and purpose actuating the defendant in the commission of the crime.

**4.—Same—Conspiracy, How Far Binding.**

It makes no difference at what time any one enters into a conspiracy to commit a crime. Everyone who does enter into the common purpose or design is generally deemed a party to every act which has before been done by the others, and to every act which may afterwards be done by any of the others in furtherance of such common design.

**5.—Same—Charge on Weight of Evidence.**

Where the court, in effect, charged the jury that he had admitted the acts and declarations of a coconspirator upon the idea that she was a conspirator with defendant; and stated further, that his action in admitting such evidence meant only that sufficient evidence of the conspiracy was offered to permit this testimony in order that they might determine, from all the testimony, whether or not there was a conspiracy; Held, clearly a charge upon the weight of testimony, since it was a direct statement, that, in the opinion of the court, sufficient evidence of the conspiracy existed to admit such testimony.

Appeal from the District Court of Fannin. Tried below before Hon. Ben H. Denton.

Appeal from a conviction of murder in the first degree; penalty, imprisonment in the penitentiary for life.

The indictment charged appellant with the murder of I. J. Martin (his son-in-law), on the first day of May, 1901, by shooting him with a pistol.

The facts adduced in evidence are substantially stated in the opinion.

*Taylor & McGrady*, for appellant.

*Rob't A. John*, Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life.

The following are substantially the facts adduced upon the trial: Deceased and his wife, Nannie Martin, and four children, lived on a farm south of Honey Grove, in Fannin County. Deceased's wife for two or three years prior to the homicide had complained bitterly to divers and sundry parties of cruel conduct towards her on the part of deceased, and in many instances coupled with said complaints was the hope that deceased would die; that he ought to be killed; that she would kill him, and tried to hire parties to kill him, and tried to get parties to buy 38-caliber cartridges for her. Cruel conduct towards the wife on the part of deceased was also testified to by his children. The State controverted the general accusations of cruelty by showing the general reputation of deceased as being a quiet and inoffensive citizen. Among other accusations made by the wife of deceased was that he had cursed her. The State controverts this by showing, through various witnesses, that deceased did not use profane lan-

guage. Some three or four weeks prior to the homicide defendant, the father of Nannie Martin (deceased's ·wife), at the instance of deceased, was invited and brought to his home to live. Defendant testified that upon reaching their home deceased told him of the misconduct of his wife, and appellant proceeded to watch her, and found that her conduct was entirely blameless. About 2 o'clock on the evening of the homicide ·deceased and his oldest son went to Honey Grove in a wagon, and returned about 8 o'clock in the evening, deceased bringing dresses for his twin daughters. While deceased was at Honey Grove, Mrs. Carter was washing clothes at the house of deceased, and she testified that Mrs. Martin approached witness, and told her that she and her father were going to take a nap, intimating that she did not desire to be disturbed; and they remained in the house for some time alone. When deceased returned from Honey Grove, he came from the lot, went into his bedroom (the house consisting of three rooms), and lay down on a cot. Appellant testified that he went out of the room he was in, through the kitchen, and approached the cot where deceased was lying, through the door from the kitchen, and shot deceased in the head.· He then went out into the yard a few moments, and, thinking perhaps deceased was not dead, returned, secured another pistol, and shot deceased again in the head. Defendant then returned to the yard, where deceased's wife and children were, and was seen there by parties passing a short while after the homicide. He then left, and some time thereafter was arrested. Upon being warned, he stated he killed deceased because he had imposed upon his wife, mistreated her in various ways, accused her of infidelity, etc.; that this was the sole cause of the killing; that other than that he had nothing against deceased; that after deceased left for Honey Grove deceased's wife proceeded to tell appellant of the ill treatment by deceased of her; that the statement so narrated so enraged appellant that he then and there resolved to kill deceased for said slander and mistreatment of his wife; that this resolution was not communicated to the wife of deceased. The State proved that blood was found on the lamp chimney, on the wall of the room where deceased was killed, and also that blood was upon the dress the wife was wearing, which was stored away in an outhouse. The dress was identified by several witnesses as being the one that the wife wore the evening of the homicide. It is also in evidence that the wife manifested no grief, showed no anxiety or regret, over the death of her husband, nor did her children manifest ·any. She remained out of the house nearly all the night in the yard. ·There are other circumstances in the record going to show the complicity ·and consent of the wife to the killing, but we do not deem it necessary to detail them in order to properly discuss the questions raised.

Appellant objects to the action of the court refusing his special charge number 3, as follows; "If you believe from the evidence that defendant killed deceased on account of having been told and informed of· insulting conduct and words by deceased towards and concerning defendant's ·daughter, and that such killing took place upon the first meeting of

defendant with deceased after defendant was informed of such insulting words and conduct, then you are instructed that, in considering the question of manslaughter, the time which may have intervened between the time when defendant received such information and the time he killed deceased would not be a material consideration nor in such case would it be material that defendant during such intervening time may have prepared to take the life of deceased, if he did so prepare." We do not think the court erred in refusing this charge. However, in view of another trial, we think the court should charge the jury the law as laid down in the Eanes case, 10 Texas Criminal Appeals, 421. There we held, under the statute authorizing the defense of insulting conduct · toward a female relative, that four issues of fact are presented: First, the occurrence of insulting words or conduct on the part of deceased towards the female relative of accused; second, whether that was the real provocation which induced the killing; third, whether the killing took place immediately on the happening of the insult, or as soon thereafter as the accused, having been apprised thereof, met with deceased; and fourth, whether accused when he killed deceased was affected by such a degree of anger, rage, resentment, or terror as would commonly, in a person of ordinary temper, render the mind incapable of cool reflection. And we take it that the court should have further charged the jury that the mere lapse of time between the formation of the design to kill and the killing would not of itself show that appellant was not actuated by such passion as rendered his mind incapable of cool reflection at the time of the killing. While the trial judge substantially gave the above quoted charge in the main charge, still, in view of the fact that the evidence presents manslaughter upon sudden passion, under another clause of the manslaughter statute, and in view of the further fact that the trial court charged upon said phase, we think the distinction between the two grades of homicide should have been clearly and explicitly defined. And in this connection the charge should explicitly state whether deceased had offered the insults to appellant's daughter, or whether he had slandered her or not, would be immaterial, if the jury believed from the evidence that appellant thought deceased · had slandered his daughter; in other words, the statements of appellant's daughter to him would be a predicate to reduce the killing from murder to manslaughter, whether his daughter's statements were true or false, if believing them he acted upon said statements. For a full discussion of the law relative to this matter, see Jones v. State, 33 Texas Criminal Reports, 492; Messer v. State, ante, page 97, 2 Texas Court Reporter, 904.

Appellant also insists that the court erred in charging on the law of conspiracy. We have detailed substantially the evidence adduced. However, viewing the whole record, and considering all the circumstances adduced, those stated above as well as others, we are of opinion that it was proper to charge on the law of conspiracy.

By bills of exception appellant complains that the court erred in admitting in evidence various acts and declarations of Nannie Martin made

long before the homicide, and in the absence of the defendant. Appellant cites us to Cox v. State, 8 Texas Criminal Appeals, 256, in which the court used the following language: "If two or more act together, with unlawful intent, in the perpetration of a crime, they are coconspirators and principal offenders by reason of their common design and co-operation, and, whether they be tried and indicted jointly or separately, the antecedent acts or declarations of each, pending and in pursuance of the common design, and tending to throw light upon its execution or upon the motive or intent of its perpetrators, are competent evidence against each and all of them." A casual reading of this opinion appears to sustain appellant's contention that only acts and declarations made during the pendency and in pursuance of the common design can be proved, as indicated in the above excerpt. However, we believe that a careful perusal of the opinion will show that the converse of appellant's contention is the rule laid down. The court quote the following language of Mr. Greenleaf with approval: "The same principles apply to the acts and declarations of one of a party of conspirators in regard to the common design as affecting his fellows. Here a foundation must first be laid by proof sufficient, in the opinion of the judge, to establish prima facie the fact of conspiracy between the parties, or proper to be laid before the jury as tending to establish such fact. The connection of the individuals in the unlawful enterprise being thus shown, every act and declaration of each member of the confederacy in pursuance of the original concerted plan and with reference to the common object is, in contemplation of law, the act and declaration of them all, and is therefore original evidence against each of them. *It makes no difference at what time any one entered into the conspiracy. Every one who does enter into a common purpose or design is generally deemed in law a party to every act which has before been done by the others, and to every act which may afterwards be done by any of the others, in furtherance of such common design.* Sometimes, for the sake of convenience, the acts and declarations of one are admitted in evidence before sufficient proof is given of the conspiracy, the prosecutor undertaking to furnish such proof in a subsequent stage of the cause. But this rests in the discretion of the judge, and is not permitted except under particular and urgent circumstances, lest the jury should be misled to infer the fact itself of the conspiracy from the declarations of strangers." And the court also quotes from the case of The People v. Brotherton, 47 California, 388, as follows: "Where two are jointly indicted, the prosecution may on the trial prove the declarations and acts of one done in the absence of the other, before proving the conspiracy between the defendants, provided proof of such conspiracy is afterwards made." In Stevens v. State, 42 Texas Criminal Reports, 154, we say: "We think the testimony established the fact that appellant was a coconspirator in the triple murder of the Humphreys, and being such, whether he entered at the beginning of the conspiracy or subsequently, the acts and declarations of Joe Wilkerson would be admissible as illustrating the common design, purpose, and intent with which they

all acted; and would be whether the acts or declarations of Joe Wilkerson were made before or after the formation of the conspiracy."

We therefore hold that the court did not err in admitting the acts and declarations, threats, animus, and conduct of Mrs. Nannie Martin towards the deceased, although said acts, threats, and conduct covered a period of two or three years; since they tend to illustrate and make manifest the common design, purpose, and intent that actuated appellant at the time of the commission of the offense. We take it to be clearly within consonance with law as well as reason, that if a party threatens to take the life and forms the design to take the life of another, the fact that said party may, subsequently to said formed design, secure the services of a coconspirator, such subsequent procurement of the services would not render inadmissible the acts, threats, and formed design of the party so securing said services.

The sixteenth ground of the motion for new trial insists that the court erred in giving the following charge: "The court has admitted evidence before you of the acts and declarations of Mrs. Nannie Martin upon the idea and theory that she was a coconspirator with the defendant; but my action in admitting this evidence means only that sufficient evidence of the conspiracy was offered to permit the testimony to go to you, for you to determine from all the evidence whether or not there was in fact such conspiracy. If two or more persons enter into an agreement to kill any reasonable creature in being within this State, this, in law, constitutes a conspiracy to commit the crime of murder, and all parties to such agreement are conspirators. In order to constitute a conspiracy, there must be a positive agreement to commit the crime; that is, to do the act of killing. It is not necessary for the State to prove that the parties actually met together and made the agreement to kill. It is sufficient, if the evidence shows that they performed different parts or acts, all contributing to the accomplishment of the common design, and the agreement to commit the crime may be proved by circumstantial evidence. The fact of conspiracy can not be proved by the declarations of any of the conspirators; that is, except as to the one making the declarations; but when the fact of conspiracy to commit a crime has been established by competent and satisfactory evidence, the declarations and acts of any one of the conspirators are admissible in evidence against any of the parties to the agreement, for the purpose of establishing the commission of the crime. But to be admissible for such purpose, such acts must have been done and such declarations made during the pendency of the conspiracy, and the furtherance of the accomplishment of the common purpose; that is, such acts must have been performed and declarations made after the agreement to commit the crime was entered into, and before the crime was committed." It will be seen that the latter portion of the charge on the law of conspiracy, limits the acts and declarations of a coconspirator to those acts and declarations made during the pendency of the conspiracy; and that said acts

and declarations must be made after the agreement to commit the crime was entered into. This is not correct, since we have held that the acts and declarations of a coconspirator may be admitted, not, as the court states, for the purpose of proving the conspiracy against another party other than the one making them, but that such acts and declarations may be admitted to illustrate and make manifest the intention with which the parties subsequently acted in carrying out the conspiracy. In other words, the fact that A states he intends to kill B, and in pursuance of that intent, he secures the aid of C, A's previous declarations may be admitted to illustrate the intent and to show the purpose, object, and motive of the conspiracy and the animus actuating the parties in the commission of the crime. We take it that it is not necessary for the State to prove an absolute expressed consent of conspirators, and the intent that actuated each of the conspirators in getting up the conspiracy; but the State may rely upon the circumstances surrounding the matter, to show that the conspirators, by implication at least, adopted the animus and intent and purpose of the chief conspirator as made manifest by his declarations prior to the formation of the conspiracy. Clearly, acts and declarations of conspirators made during and in pursuance of the conspiracy are admissible. Then, if the acts and declarations of a conspirator are admissible under these circumstances, we take it that it follows, by logical sequence, that the acts and declarations made prior to the formation of the conspiracy make manifest the purpose of the same, and are admissible in the trial. So, it will appear that appellant could not complain of the latter clause of the charge, since it restricted the evidence introduced upon the trial hereof in a manner favorable to appellant's interests; but we take it that he has just cause to complain of the first clause in the charge. The court there tells the jury that he admitted the acts and declarations of Mrs. Nannie Martin upon the idea and rule that she was a conspirator with the defendant, and then states that his action in admitting this evidence means only that sufficient evidence of the conspiracy was offered to permit the testimony to go to the jury, for them to determine from all the evidence whether or not there was in fact such conspiracy. We take it that this charge is clearly a charge upon the weight of the evidence, and is a direct statement by the court to the jury that the court in its opinion thought sufficient evidence of the conspiracy was offered to permit the testimony to go before the jury. The court should have charged the jury, instead of this, that the jury should not consider the acts and declarations of Nannie Martin for any purpose whatsoever, unless they should first decide from the evidence beyond a reasonable doubt that appellant conspired with Nannie Martin to kill deceased, and, if they should find that said conspiracy was so formed, then the acts and declarations of Nannie Martin could then be considered by the jury in passing upon the animus and intent and purpose of the appellant in committing the crime, if he did commit it, and for

no other purpose.    The rule in reference to charges upon the weight of the evidence is sufficiently declared in Stuckey v. State, 7 Texas Criminal Appeals, 174.

We do not deem it necessary to discuss the other assignments of error; but, for the errors discussed, the judgment is reversed and the cause remanded.

*versed and remanded.*