### NANCY MARTIN v. THE STATE.

No. 2576.  Decided November 26, 1902.
Motion for Rehearing Overruled December 17, 1902.

**1.—Murder—Declarations of Coconspirator.**

On a trial for murder, where it appeared that defendant and another acted together in the killing, the declarations of such coconspirator, made several hours after the homicide, stating how he killed deceased and that the weapons he used were in the house where the killing occurred, were inadmissible for defendant on the trial, such declarations not being res gestae and the case not being one of circumstantial evidence.

**2.—Bill of Exceptions to Excluded Evidence.**

A bill of exceptions to excluded evidence, to be sufficient, must show the purpose for which the evidence was tendered.

**3.—Same.**

A bill of exceptions to the exclusion of evidence that only becomes admissible upon proper predicate laid, can not be revised unless the bill shows the predicate which rendered the evidence admissible.

**4.—Murder—Evidence as to Character of Deceased.**

Evidence as to the reputation of deceased, to the effect, that he was a law-abiding citizen, and never used profane language, and was humane to his family, was competent to be introduced by the State as tending to combat the issue raised by defendant, that deceased was a man of violence

who cursed and swore and mistreated her in various ways, and that her father had killed him on account of his insulting conduct to her, defendant.

**5.—Accessories and Accomplices.**

Children of deceased and defendant can not be accessories after the fact of the crime. And the mere fact that they were present at the killing of their father, and concealed the crime, did not make them accomplices to the crime.

**6.—Principals.**

It is not necessary, in order to constitute one a principal to a crime committed inside a house, that such party should be within the walls of the house at the time of its commission; but, if the party be in such close juxtaposition at the time of its commission as to make her constructively present, she would be a principal, and if she had previously advised, encouraged or agreed to the commission of the crime, and was constructively, by juxtaposition, present at its commission, this would make her a principal.

ON REHEARING.

**7.—Murder—Evidence as to Motive.**

On a trial of the wife for the murder of her husband, when the State's theory was that appellant and her father, to get possession of money that would be due on an insurance policy in the event of his death, killed him, it was proper for the State to further show that the policy of insurance on his life had been canceled for nonpayment of premiums; and such testimony was not hearsay or irrelevant or inadmissible because the defendant, his wife, was not present at the time his policy was canceled.

**8.—Argument of Counsel—Practice on Appeal.**

The court on appeal can not be called upon to pass on the admissibility of testimony and predicate its ruling upon the sophistry or valid arguments which might or could be made by counsel for State or defendant.

**9.—Bills of Exception to Exclusion of Testimony.**

Bills of exception to the exclusion of testimony which is not clearly admissible on its face, must state the reasons why such testimony was tendered, so that the identical question passed upon by the court below may be the same question presented to this court for revision.

Appeal from the District Court of Fannin. Tried below before Hon. Ben H. Denton.

Appeal from a conviction of murder in the second degree; penalty, eleven years imprisonment in the penitentiary.

The indictment charged appellant separately with the murder of her husband, I. J. Martin, by shooting him with a pistol.

R. D. Hudson, the father of appellant, had also been separately indicted for said murder, and upon trial was convicted. He appealed, and the case of Hudson v. State, 43 Texas Crim. Rep., 420, is the companion case to this case, and the essential facts pertaining to the murder will be found contained in that case. .

The opinion fully illustrates the questions raised by bills of exception.

*Lusk & Thurmond* and *Taylor & McGrady,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellant was convicted of murder in the second degree, and her punishment assessed at confinement in the penitentiary for a term of eleven years. This is a companion case to that of Hudson

v. State, 43 Texas Crim. Rep., 420, and the facts as stated in that
opinion are substantially those disclosed by this record.

By bill number 1 complaint is made that, after J. E. Hammett had
testified in chief for the State, appellant offered to prove by said wit-
ness that when he arrested R. D. Hudson on the night of the homicide
he immediately informed Hudson that he arrested him for the murder of
I. J. Martin, and that said Hudson then stated that he killed Martin,
and that he was glad of it, and that he ought to have killed him before
he did, and did not say anything about any other person being impli-
cated therein; that said witness would have testified to said facts. The
State objected to this testimony, which the court sustained, on the
ground that it was hearsay, and because one conspirator could not tes-
tify for the other. Appellant further offered to prove by said witness
that upon his return to the house with Hudson, after arresting him, and
more than three hours after the killing, and when W. D. Hudson,
deputy sheriff, went into the house and brought out a pistol to the buggy,
where witness and R. D. Hudson were, and then said pistol was exhib-
ited, and it showed that only one shot had been fired out of it, said co-
defendant, Hudson, then stated to witness that he (Hudson) had used
another pistol in shooting deceased, and had fired the same twice, and
that such other pistol was in the house; that said witness would have
testified to said facts. Appellant offered further to prove that, after said
witness started to Honey Grove with R. D. Hudson, he stated to witness
that he had used two pistols in shooting deceased; that he shot him
twice with one pistol, and then the pistol hung and would not revolve,
and he got another pistol and shot him once with it; that he then left
both pistols in the house; that it was upon information received by wit-
ness from R. D. Hudson that he went in the house and got the other
pistol; that defendant offered the foregoing evidence, after the witness
had sworn that he and his deputy W. D. Hudson had arrested R. D.
Hudson and brought him back to the house where Martin was killed;
that only witness and W. D. Hudson were with R. D. Hudson, and no
one else was present, and W. D. Hudson had gotten information that
the pistol or pistols with which the killing was done were in the house,
and after the witness had said, "Old man Hudson had told us," and
had been stopped by the court at the instance of the State, who told the
witness to tell what he and his deputy did, and not to state what any-
body said; and said Hammett would have testified to said facts, etc.
The court did not err in excluding any of the testimony offered by appel-
lant. The bill does not show that the evidence offered was any part or
parcel of the res gestæ, but, on the other hand, it clearly shows that it
is not, since the same would be the acts and declarations of a co-
conspirator, made long subsequent to the consummation of the con-
spiracy, to wit, the homicide. This character of testimony can not be
introduced. Wright v. State, 10 Texas Crim. App., 476; Pharr v.
State, Id., 485; Draper v. State, 22 Texas, 400. However, we note that
appellant in his brief contends that this evidence was part of a conver-

sation drawn out by the State. The bill does not support this position.
We find this statement in the bill: "The State had only proved by said
witness on that point the fact of arrest, which arrest was made after
12 p. m., the homicide having occurred about 9 p. m." The bill refers
to the statement of facts for further information, and a close inspection
of the facts supports the above statement copied from the bill. We note
the insistence of the Assistant Attorney-General that the bill is defective,
in that the same does not show the purpose for which the evidence was
tendered. This alone disposes of the bill, since it is a necessary requisite,
and such fact is not stated in the bill. Bailey v. State, 37 Texas Crim.
Rep., 579; Childers v. State, 37 Texas Crim. Rep., 392. Furthermore,
the bill does not state that the same was a part of a conversation intro-
duced by the State, nor is the predicate authenticated or certified by the
judge that the same was a part of a conversation elicited by the State.
Nor does appellant state in his bill that said evidence was admissible and
tendered for that purpose. We have heretofore held that the bill
which excepts to the exclusion of evidence that only becomes admissible
upon a proper predicate laid can not be revised, unless the bill fully
shows the predicate which rendered the evidence admissible. Highsmith
v. State, 41 Texas Crim. Rep., 32. The evidence could not be admis-
sible on the ground that this was a case of circumstantial evidence, and
that perhaps some one else killed decedent, since the evidence shows
that appellant, acting together with her codefendant, R. D. Hudson,
killed deceased; and hence the declarations of R. D. Hudson that he
killed deceased, with the reasons and wherefores of the same, would not
be competent evidence going to exculpate this defendant.

Bill number 2 complains that the court erred in admitting evidence
as to the reputation of deceased, to the effect that deceased was a peace-
able, law-abiding citizen, and that his reputation was that of a man
that never swore or used an oath. It is the general rule that the char-
acter of deceased is not admissible in evidence, either for or against
defendant, except where there is some predicate laid by the adverse party
attacking that character, or where the character would traverse some
issue presented by the evidence. The evidence discloses that appellant's
defense was predicated upon the fact that her father killed deceased
without her knowledge and consent; that her father's crime was predi-
cated upon manslaughter, on account of insulting conduct offered by
deceased to appellant, who was the daughter of codefendant, Hudson.
There is a great deal of evidence introduced by appellant to support her
contention. Clearly, then, it is proper and germane to meet this issue
for the State to introduce the general reputation of deceased as being a
peaceable and quiet man, to contradict appellant's theory; and, further-
more, it is equally germane to prove his general reputation as being that
of a man who did not curse and swear. It is a general proposition of
criminal evidence that a party is always entitled to introduce his char-
acter as a circumstance to prove that he would not be guilty of the par-
ticular crime with which he is charged. Whart. Crim. Ev., sec. 60.

This applies as well to the State as an offensive matter as it does to the defendant as a defensive issue. Certainly, if appellant should be permitted to introduce evidence going to show that deceased had cursed her, accused her of infidelity and unchastity, and abused and mistreated her in various ways, then the State should be permitted, with equal justice, to introduce any legitimate evidence that tends to combat this issue made by defendant. Evidence going to establish the fact that he is a peaceable and quiet man, humane to his family, and a man whose reputation was that of one who did not curse or swear, is competent and proper, as tending to combat the issue raised by appellant. Everett v. State (Texas Crim. App.), 24 S. W. Rep., 505.

Appellant in motion for new trial complains of the failure of the court to charge that certain witnesses tendered by defendant were accomplices, and that upon cross-examination they testified to original matter for the State, and for that reason a charge on accomplice testimony should have been given. In appellant's brief he insists that Robert, Emma, and Emmie Martin, the children of deceased, were accomplices, and that the evidence shows they concealed the crime, and to that extent protected their grandfather Hudson as well as their mother, appellant, and by failing to make known the fact that they were perpetrators of the crime. These witnesses, being the children of appellant, could not be accessories after the fact, conceding the evidence shows they did conceal the fact that the crime had been committed, as this relationship to Hudson and appellant is such that the statute itself exempts them. Penal Code, arts. 86, 87; Adcock v. State, 41 Texas Crim. Rep., 288. Furthermore, the bare fact of their presence at the commission of the crime, and their failure to give alarm or notice of its commission, does not constitute them accessories. In Shackey v. State, 41 Texas Crim. Rep., 255, the court said: "The mere fact that the witness knew that the offense had been committed and remained silent would not make her a principal, nor will the further fact that the following day she concealed her knowledge of Fisher's connection with it make her a principal." The aid or assistance or concealment must redound to the personal benefit of the principal. There is nothing in this record which shows that the witnesses above stated knew the crime was to be committed, or that they advised, aided, or encouraged its commission. The nearest approach to anything indicating this is the bare knowledge of ill feeling between appellant and the father of witnesses, the husband of appellant. This surely would not make them accessories in any sense, even if the statute above cited did not preclude this idea.

Appellant further insists that the charge of the court on principals is not correct, in that the undisputed evidence shows that appellant was not in the house or room where the murder was committed, but outside the yard, near the gate or barn. The barn was within thirty steps of the house, and the gate is still nearer. It is not necessary, in order to constitute one a principal to a crime committed inside the house, that the party should be within the walls of the house at the time of its commis-

sion. The presence need not be strictly actual immediate presence, such a presence as would make an eye or ear witness, but may be a constructive presence. Grimsinger v. State, ante, p. 1; 5 Texas Ct. Rep., 628; Pryor v. State, 40 Texas Crim. Rep., 643; 1 Russ. Crimes, sec. 49; McClain Crim. Ev., 199. The gate and barn were, as stated, in such close juxtaposition to the crime as to make appellant constructively present at its commission. This case, in all the phases raising the question of the nonpresence of the accused at the commission of the crime, is similar to that of Grimsinger v. State, supra, which is referred to for further discussion. It is not necessary that the evidence show appellant was, at the immediate time of the commission of the crime, doing some act in furtherance of the same. If she had previously either advised, instigated, encouraged, or agreed to the commission of the crime, and was present as above stated, this alone, under article 78, Penal Code, makes her a principal.

- Appellant insists that the evidence is not sufficient to support the conviction. We can not agree to this, but believe the evidence clearly demonstrates, to the exclusion of doubt, the participancy of appellant in the murder of her husband; that same was prompted from the desire to procure possession of his little farm and life insurance and other effects that his frugality had accumulated. She tried to bribe parties, offering $500, to kill her husband, and stated that she wished he was dead, and made divers and sundry threats against deceased; she turned against him, and made confession to her father on the day of the homicide of ill treatment, etc.; she changed her clothing, which showed traces of blood, after the crime, and showed agitation when the dress that she wore when the crime was committed was discovered; she was stoical and indifferent at the death of deceased, and showed callousness up to the very time of the funeral. These, with divers other circumstances too numerous to recount, exclude all reasonable doubt of her guilt. The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

BROOKS, Judge.—This case was affirmed at a previous day of this term, and now comes before us on motion for rehearing.

The first ground of complaint is that the court erred in holding that the admission of the testimony of the witness Bloys was not error. The motion, and this is borne out by the original opinion, states that this court did not mention this bill. However, we considered it, and did not then nor do we now deem it necessary to elaborate on it, since we hold there was no error in the ruling. On the insistence of appellant, however, we will review the bill. It appears that upon the trial the State proved by Bloys that he canceled deceased's life insurance policy in March before it ran out in the following November for failure to pay premium, and that deceased was present when witness canceled said policy. To this testimony appellant objected on the ground that the

same was hearsay, and in the absence of defendant, and irrelevant and incompetent and immaterial, and calculated to injure the rights of the defendant before the jury. All of the objections, except the first, have been repeatedly held by this court as well as by the common law authorities as not sufficient objections, unless the testimony would not be relevant, competent, or material for any purpose. That the testimony was hearsay, as insisted upon by appellant, we do not agree. The State's theory was that appellant, with her father, Hudson, murdered deceased for the purpose of getting possession of his property, together with the money that would be due on an insurance policy in the event of his death. The bill, as appellant insists, does not show that defendant was not present at the time the policy was canceled; but this would not render the testimony inadmissible. Certainly it is germane for the State to prove the existence of the policy. Certainly the court would have erred in refusing to permit appellant to prove said policy was canceled, although appellant might have been unable to show by positive evidence that she knew as a fact the cancellation of the policy. If the existence of the policy would show motive for the crime, the non-existence of the policy would to that extent destroy the motive for the crime; and hence, as indicated, if appellant herself had offered this testimony, it would have been admissible as going to refute the State's theory upon which this prosecution is based. If appellant did not know as a matter of fact that the policy was canceled, then the fact that it was canceled by deceased in her absence would not destroy the motive for the killing. As shown, this testimony would have been admissible for appellant, and the same reasons that applied to its admissibility for her side of the case with equal force could be urged for its admission on the part of the State. However, appellant insists that the same is inadmissible because of the character of argument urged by State's counsel predicated upon the cancellation of the policy. Certainly we can not be called upon to pass on the admissibility of testimony, and predicate our ruling upon the sophistry or valid arguments made by counsel for State or appellant. If, as the evidence shows, deceased canceled the policy, appellant could with equal force say that this was corroborative of her testimony that deceased was unmindful of her care and maintenance, and certainly appellant's counsel, with their usual ability, could have urged this fact with a good deal of force as a circumstance to corroborate appellant in the statement that deceased had maltreated her in various ways. If the State shows a motive for a crime and circumstances intervene which destroy that motive, which circumstances are not known to appellant, it would be an act of which appellant could not complain. There was no error in the ruling of the court.

Appellant also insists that the court erred in holding that the law of accomplices should not have been given with reference to Robert, Emmie, and Emma Martin. We have carefully reviewed the evidence tending to show any complicity on the part of said witnesses in this homicide, and there is no testimony that connects them with it, such as

makes them accessories under the statute, not considering their relationship to appellant. Mere knowledge of a crime and concealment does not make such person an accessory under any circumstances. If the evidence had shown that these parties had any guilty participation in the killing, there might be some force in appellant's position, because such facts might indicate that they were accomplices. The statute does not inhibit said parties from being accomplices to a crime, but the evidence does not show any such condition. We differ with appellant's counsel as to his position wherein he insists that these children are as guilty as their mother, the appellant. The facts stated in the original opinion show beyond doubt the guilty participancy of appellant in the crime, but these same facts merely place said witnesses in the attitude of silent and sorrowful witnesses to quarrels between their mother and father. Though this is a misfortune, it is not a crime, in Texas.

Appellant's third and last insistence is that the court erred in holding that the statement made by R. D. Hudson to Hammett and his deputy to the effect that he shot deceased three times, twice with one pistol and once with another, and that both pistols were in the house, etc., was not admissible. As stated in the original opinion, declarations of a co-conspirator, where the evidence clearly establishes the fact, as it does here, that such were made subsequent to the consummation of the conspiracy, inculpatory or exculpatory of a coconspirator, are never admissible, under any rule of law in this State. However, we note that appellant insists, this being a case of circumstantial evidence, the declarations of a coconspirator indicating that he committed the crime would be admissible. There might be some force in this position, were it not for the overwhelming facts showing beyond all reasonable doubt that appellant and the said R. D. Hudson, one or the other, killed deceased while one or the other was aiding, acting, abetting, advising, and assisting in the commission of the crime, while then and there present. Of course, it can be justly stated that, where one is being tried for a crime upon circumstantial evidence, which circumstances do not, as in this case, connect the other party directly with the crime, circumstances going to show that the other party had opportunity and motive for the killing might be germane to and admissible upon the trial. But this is not the case here, nor do the facts warrant such a position. This disposes of appellant's third complaint.

But we note his earnest insistence that this court is wrong in holding the bill is defective in presenting this matter in not showing the purpose for which the testimony was offered; and in said motion we find the following statement: "The rule announced by this court is, in this instance, unreasonable, and finds no precedent in any text-writer or decision of any appellate court outside of the recent records of this court." We are not unmindful, as appellant insists, that there is a lack of uniformity of decision among courts of last resort on rules of procedure, but we must say that appellant's counsel in his present position is in error. Since the organization of this court, from Massey v. State,

1 Texas Crim. App., 563, the rule in reference to bills of exception has been uniformly maintained, as contained in the original opinion. And for a collation of authorities on this subject, see White's Ann. Code Crim. Proc., p. 735, note 5. Of course, as appellant insists, if this testimony was admissible by the bare statement thereof, there might be some force in his contention; but the bare statement thereof, in our opinion, does not render the testimony admissible. If there are any circumstances under which the same could and should have been admitted, those circumstances should have been stated, and the purpose of said testimony should have been made known and manifested to the court below. This rule, as we understand it, has been followed by the Supreme Court of this State, at least since Dunham v. Forbes, 25 Texas., 25; and in Moss v. Cameron, 66 Texas, 413, Chief Justice Willie delivering the opinion, uses this language: "It is the duty of a party complaining that a right has been denied him on the trial to take such a bill of exceptions as would show to this court what he proposed to do, and what the judge refused to permit him to do. If the evidence ruled out is subject to the particular objection sustained to it, but is admissible for any other purpose, it is the duty of the party proposing to introduce the testimony to satisfy the court that he has a legitimate object in view in offering it, so that the judge may, by his charge or otherwise, confine its effect to that purpose alone. This was not done so far as we can ascertain from the bill, and we can not revise the court's action in rejecting the testimony." This court passes upon cases appealed from the district and county courts. We are presumed to pass upon the questions raised in the lower court, and certainly it would be a novel proposition for appellant to urge one purpose for the introduction of testimony in the lower court, or no purpose at all, and then for the first time to urge his purpose in offering the testimony in this court. If this could be done, then the lower courts would be passing upon one question, and this court upon another; and our decision, instead of being a revision of the orders and rulings of the nisi prius court, would be an original declaration of the law upon a state of facts not presented to the trial court. This, we understand, is the reason why the bills of exception should show the purpose for which the testimony was offered. Now, reverting to the testimony of Hudson; suppose Hudson, instead of declaring that he shot deceased, as appellant insists, should have stated that appellant shot deceased. We apprehend appellant, under these circumstances, would have had a bill of exceptions to the admission of such testimony, and we would have promptly reversed the case. Then, clearly, if the State, under the conditions here stated, could not prove a declaration of Hudson going to inculpate appellant, the converse of the rule certainly applies,—that appellant could not be heard in this case to introduce the declarations of a coconspirator after the termination thereof, going to exculpate appellant.

The motion for rehearing is overruled.

*Motion overruled.*