## HUGH WALKER v. THE STATE.

No. 15875.  Delivered April 5, 1933.
Rehearing Denied May 31, 1933.
Reported in 60 S. W. (2d) 455.

The opinion states the case.

*W. F. Schenck,* and *Benjamin Kucera,* both of Lubbock, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for 99 years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed F. V. Brown by shooting him with a gun.

It was the state's theory—given support in the testimony—that Jess Covington, Barber John Richardson, and appellant entered into a conspiracy to rob deceased.

G. A. Ross, who was under indictment for the murder of deceased, testified, in substance, as follows: After agreeing to let Jess Covington have his (the witness') rifle, he (the witness) went with appellant to the home of Bob McCaffree, where he secured his 30-30 rifle. He then got in a car with appellant, Jess Covington and Barber John Richardson. Covington drove the car to the village of Woodrow, arriving there about 9 o'clock at night. Deceased's car was parked at the home of T. B. Hilton. Covington drove his car near the point where deceased's car was parked. He (the witness) remained in the car while appellant, Covington, and Richardson approached deceased's car. Richardson carried an automatic pistol, while appellant carried the witness' rifle. As the parties approached deceased's car a dog barked, and shortly thereafter two or three shots were fired. Immediately after the shots were fired, appellant, Covington, and Richardson rushed back to the automobile. Starting the car, the parties fled from the scene of the homicide, driving at a rapid rate of speed. After leaving the scene of the homicide, Richardson threw the rifle in a lake. On the way to the lake Richardson stated to the occupants of the car that he had thrown the automatic pistol away. He (the witness) did not enter into a conspiracy to commit the robbery and had nothing to do with the killing of deceased.

About two and one-half months after the homicide, officers found the rifle in the lake described by Ross. They also found the pistol at the place mentioned in Ross' testimony.

As to the immediate circumstances surrounding the homicide, the state introduced three witnesses, two of whom identified appellant as a participant in the transaction resulting in the death of deceased. From their testimony it is made to appear that deceased had driven to the home of Mr. Hilton and was sitting in his car talking to Mr. Hilton when Richardson appeared on the scene accompanied by appellant and Covington; that Richardson had a handkerchief over his face; that he commanded Mr. Hilton to go into the house; that using a pistol he held the parties up; that deceased grabbed at the pistol and

it was fired; that immediately after the pistol was fired a shot was fired from the 30-30 rifle and deceased fell, mortally wounded; that appellant fired the shot from the 30-30 rifle which killed deceased; that the parties then fled from the scene of the homicide.

Testifying in his own behalf, appellant declared that he was in Lubbock in a hotel at the time of the homicide. He declared that he had entered into no conspiracy to rob deceased and had nothing to do with his death. Further, he testified that some time after the homicide Ross admitted to him that he was the party who killed deceased, saying that he killed deceased as the result of a dispute arising over a division of the spoils of a robbery he and deceased had perpetrated. Appellant's theory of alibi was supported by the testimony of several witnesses.

Bill of exception No. 25 is concerned with the refusal of the court to change the venue. It was averred in the application that there existed in Lubbock County so great a prejudice against appellant that he could not obtain a fair and impartial trial. On the hearing of the application appellant introduced twelve witnesses and several daily newspapers published in the City of Lubbock. Nine of the witnesses introduced by appellant lived in the City of Lubbock. One witness lived three miles north of Lubbock and another five miles west of the city. On the question of prejudice, the state introduced eight witnesses, none of whom lived in the City of Lubbock. It appears that these witnesses came from various rural communities some distance removed from Lubbock. Several of appellant's witnesses testified that in their opinion appellant could not secure a fair, impartial trial in Lubbock County. They had heard the case discussed in the City of Lubbock where they lived. Practically all of the state's witnesses expressed the opinion that appellant could receive a fair and impartial trial in Lubbock County. They testified that they had heard very little discussion of the case. Lubbock County has a population approximating 45,000. About 20,000 people live in the City of Lubbock. Most of the rural population live on farms and in small communities. There are more than 4,000 qualified jurors in the county. The extent of the circulation of the Lubbock papers throughout the county was not shown, appellant contenting himself with showing by some of the witnesses that they had read these papers.

On September 15, 1932, three special venires appeared in court, one in Richardson's case, one in the case of Covington, and the other in appellant's case. At the time these venires appeared, Covington's case was called for trial. In excusing the veniremen in the cases of Richardson and appellant, the

court instructed them that they should remain away from the courtroom during Covington's trial; that they must not read the newspapers; that they must not discuss the cases against appellant's codefendants with any person; that they were not to listen to any discussion of the cases. Again, on the 22d of September, 1932, when all the veniremen appeared in court, the court repeated his instructions, admonishing the jurors that they should not read any newspaper articles or talk about the case to any person. The veniremen appeared again on September 26th and were given the same instructions.

Most of the newspaper articles introduced by appellant were written after Covington's case was called for trial, and subsequent to the time that the special veniremen in the three cases appeared in court. In other words the articles in question appeared in the papers subsequent to the time the court instructed the veniremen to refrain from reading newspapers. These newspaper articles embraced testimony adduced on the trials of Richardson and Covington and reported in part the argument of counsel for the state. Other than the papers mentioned, appellant introduced in evidence daily papers of June 30, July 21 and July 22, carrying accounts of the killing of deceased, and referring to the fact that appellant, Richardson and Covington were charged with murder in connection with the transaction. Some of the circumstances relating to the death of deceased were recited.

In overruling the application for a change of venue, the court made the following statement: "Gentlemen, I don't know how to pass on this thing finally until I hear some of these jurors talk. All we have here is just suppositions and guesses. I don't think anybody has a right to sit here and guess what the men of Lubbock would do. I couldn't do it. I am going to overrule the motion now, but, of course, if upon examination of these veniremen it is apparent that the minds of all the jurors are made up on this thing and have been influenced by these newspapers, I don't know that these veniremen have read a single one of these papers. I told them not to do it, and I don't know whether they did or not. I will overrule the motion now, and of course, if I see that such a condition exists here, why then later on I can sustain the motion. That is as far as I can go now until we see about these men on this special venire, see what they say about it." The record fails to show how many peremptory challenges appellant exhausted. It is silent as to whether any member of the special venire had read the newspaper articles introduced in evidence. It fails to show that any of the veniremen had ever expressed an opinion, or heard an

opinion expressed, as to the guilt or innocence of appellant. It does not show that any discussion of the case was ever heard by any member of the venire. There is nothing to indicate that any venireman was challenged for cause, or that there was any prejudice whatever on the part of any member of the venire. There are no complaints in the record as to any juror selected, no contention being made that the court wrongfully overruled a challenge for cause. As far as the record reflects the matter, the jury had obeyed the court's instructions to refrain from reading the newspapers and discussing the case. Appellant's reliance for a change of venue was principally upon the fact that the evidence adduced on the trial of Covington and Richardson had been printed in the papers and read by the people of Lubbock County. There being nothing in the record warranting the conclusion that prior to the trial of Covington and Richardson the homicide had been discussed to the extent of creating prejudice against appellant or his case, and appellant having relied largely on what transpired subsequent to the time the veniremen appeared in court, it would appear to have been incumbent upon appellant, in view of the statement of the trial court when the application was overruled, to bring before this court some information relative to the attitude of the veniremen—the number entertaining opinions, the challenges exhausted by appellant in the selection of the jury, the extent to which the veniremen had heard the case discussed, if at all, and whether the instructions of the court had been disobeyed.

There have been instances in which the acts of one accused of crime have been the subject of public controversy in which newspapers have taken part to a degree that has rendered the publications important factors in creating a prejudice against the accused. In those cases the publications went beyond the point of giving the news of the day and took part in the controversy to a degree that rendered it improbable under the circumstances that an impartial trial could be had. See Fleming v. State, 62 Texas Crim. Rep., 653; Gallaher v. State, 40 Texas Crim. Rep., 296; Cox v. State, 90 Texas Crim. Rep., 106. However, the inference of prejudice requiring a change of venue is not to be drawn from the fact alone that newspapers published in the vicinity have contained news articles descriptive of the offense or editorials denunciatory of the accused. Cox v. State, 90 Texas Crim. Rep., 109; McKenzie v. State, 11 S. W. (2d) 172. According to our analysis of the bill of exception, there is nothing to indicate that prior to September 15, 1932 (the time the veniremen appeared), the newspapers had rendered themselves important factors in creating prejudice against appellant or

bringing about prejudgment of his case. On the contrary, as already pointed out, the papers published prior to September 15 contained no more than news articles descriptive of the offense. That after the cases of Covington and Richardson were called for trial the papers undertook to set out the evidence adduced, which thereafter brought about some discussion among the people, but which was not shown to have come to the ears or knowledge of the jurors comprising the special venire in appellant's case, would not, we think, justify the inference of prejudice requiring a change of venue. The testimony coming from the lips of the witnesses heard on the motion was conflicting, some of the witnesses expressing the opinion that it would be difficult for appellant to obtain a fair and impartial trial, and others entertaining a contrary opinion. It is the general rule that, if conflicting theories as to prejudice arise from the evidence, the trial court has the discretion of adopting either theory; it being his duty to weigh the evidence. McNeely v. State, 104 Texas Crim. Rep., 263, 283 S. W., 522; Bond v. State, 50 S. W. (2d) 813. The burden was upon appellant to prove the existence of such prejudice against him or against his case that it was not probable that he could have a fair and impartial trial. McNeely v. State, supra. We are constrained to hold that such burden was not discharged.

Appellant based his first application for a continuance upon the absence of Clyde Blakely and J. E. Davis. As to diligence it was averred that appellant filed his application for a subpoena for the witness Blakely on August 9, 1932, to be issued to Lubbock County; that the subpoena was not served; that he made application for a subpoena for the witness Davis on the 10th of August, 1932, to be issued to Montgomery County; that the subpoena was not served; that thereafter appellant made application for a subpoena for the witness Davis, to be issued to Gregg County; that such subpoena was not served; that according to appellant's information, the witness resided in Gregg County in the town of Kilgore. As to the materiality of the testimony, it was averred that appellant expected to prove by the witness Blakely, as showing the general reputation of state's witness Ross, that, on an occasion prior to the transaction involved in this trial, Ross had suggested to him that they kidnap the son of a resident of Lubbock County, and further suggested that they rob one Cliff Lindsey, a resident of Lubbock County, and divide the spoils. Again, the witness would testify that Lindsay was afterwards robbed, and that Ross admitted to him that he robbed Lindsey. As to the witness Davis, it was averred that he would testify that Ross

stated to him that he had sold his rifle to two men living in New Mexico, and that they had taken the gun with them to New Mexico.

Appellant was indicted and arrested on July 20, 1932. He waited nearly three weeks before he made application for process for the witnesses. We deem the diligence insufficient. The burden was upon appellant to establish the exercise of diligence in support of his application. Branch's Annotated Penal Code, sec. 314; Walker v. State, 13 Texas App., 647; Long v. State, 17 Texas App., 129; Boyd v. State, 124 S. W., 651.

We are unable to perceive the materiality of the absent testimony. The fact that Ross might have proposed to rob Lindsey and that he thereafter admitted to the witness that he did rob him seems to throw no light on the present transaction. It does not appear that the transaction involving the alleged robbery of Lindsey was in any way connected with the transaction out of which the present prosecution grew. A witness can only be impeached as to other offenses by showing that he has been legally charged with a felony or with a misdemeanor involving moral turpitude. Evidence of particular acts of misconduct is not admissible to affect the credibility of a witness. Branch's Annotated Penal Code, sec. 168; Fields v. State, 46 S. W., 418. Hence if the witness had been present it appears that the testimony he would have given would have been inadmissible. If the testimony was admissible it could only have had the effect of impeaching the witness Ross. Ordinarily a continuance is properly refused for testimony which would only be available to impeach a witness. Branch's Annotated Penal Code, sec. 324; Martin v. State, 53 S. W., 849. The testimony of the witness Davis appears to be purely impeaching. Again, the materiality of his testimony is not shown in the application for a continuance.

It may be added that appellant failed to attach the affidavits of the absent witnesses to his motion for a new trial. Hence, in passing on the motion for a new trial, the trial judge had the discretion of determining the probable truth of the absent testimony. Tubb v. State, 5 S. W. (2d) 150. In view of all of the evidence heard during the trial, the opinion is expressed that the trial judge was warranted in concluding that the absent testimony was probably not true.

Bills of exception 1 to 3, inclusive, relate to the action of the court in permitting the state to introduce in evidence photographs of the house where the homicide occurred. It appears that these photographs were taken shortly before the trial. They were shown to correctly reflect the surroundings. It is

the rule that where photographs tend to illustrate any fact in the case or to shed light upon the transaction they are admissible in evidence. Branch's Annotated Penal Code, sec. 1857; Sanchez v. State, 149 S. W., 124.

Bills of exception 3 and 4 are concerned with the action of the court in permitting the district attorney to testify to finding a rifle in a lake. The state's witness Ross testified on the trial that after the homicide his rifle, which had been taken to the scene of the homicide by appellant and his companions, was thrown into this lake. The district attorney and others went to the lake and discovered the rifle. Upon the trial it was identified by the witness Ross as belonging to him. Appellant's objection to the testimony was properly overruled.

Bill of exception No. 5 shows that the court permitted the accomplice witness Ross to testify that a few hours before the homicide Covington stated to him, out of the present of appellant, that he wanted to borrow his rifle. The bill of exception is qualified by the court with the statement that shortly after this conversation it was shown that appellant went with Ross to the home of McCaffree for the purpose of getting the rifle in question; that Ross had testified that he had a conversation with appellant regarding letting Covington have the rifle, and that appellant assured him that it was all right to let Covington have the gun; that he would reimburse Ross if Covington did not return the gun. The bill is further qualified to show that the state's testimony was to the effect that there was a conspiracy between the parties to rob deceased. There was no error in admitting the testimony. We quote from Branch's Annotated Penal Code, sec. 693, as follows: "When a conspiracy is shown, proof of the acts and declarations of co-conspirators is admissible to show the common design, purpose and intent of all the conspirators, whether such acts and declarations were made before or after the formation of the conspiracy, or whether the same were made before or after the defendant on trial entered into the conspiracy. Harris v. State, 31 Texas Crim. Rep., 414, 20 S. W., 916; Stevens v. State, 42 Texas Crim. Rep., 172, 59 S. W., 545; Casner v. State, 42 Texas Crim. Rep., 123, 57 S. W., 821; Hudson v. State, 43 Texas Crim. Rep., 424, 66 S. W., 668; Nelson v. State, 43 Texas Crim. Rep., 553, 67 S. W., 320; Baker v. State, 45 Texas Crim. Rep., 395, 77 S. W. 618; Chapman v. State, 45 Texas Crim. Rep., 486, 76 S. W., 477; Smith v. State, 46 Texas Crim. Rep., 274, 81 S. W., 936; Banks v. State, 52 Texas Crim. Rep., 481, 108 S. W., 693; Hunter v. State, 54 Texas Crim. Rep., 226, 114

S. W., 125; Milo v. State, 59 Texas Crim. Rep., 201, 127 S. W., 1025; Wilson v. State, 154 S. W., 1015."

We have not undertaken to discuss all questions presented in the voluminous record. However, we have carefully examined all of appellant's contentions. We are constrained to hold that reversible error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant calls attention to the following statement in our original opinion. "Richardson carried an automatic pistol, while appellant carried the witness' rifle." In so far as the statement appears as coming from the witness Ross it is inaccurate. We should have said that other state's testimony showed that at the time of the killing Richardson used an automatic pistol and appellant used a rifle belonging to Ross.

Appellant insists that this court should express itself regarding the action of the court complained of in bill of exception number nine. Ross had testified that he owed McCaffree $2.70 and had gotten some whisky from him. While McCaffree was on the witness stand he was asked if he had not sold whisky to Ross; he declined to answer. The bill recites that the court said: "I will protect the witness if he don't want to answer. It is incriminating testimony against himself, and he don't have to answer." The court qualified the bill to show that he stopped the examination on the point and told the witness that he did not have to answer the question if it incriminated him. We see no error in the court's action.

Appellant also insists that error is exhibited by bill of exception number eleven which shows that over objection Mrs. Montana testified that between sundown and dark on May 30th she saw Covington driving a new Chevrolet sedan south on Avenue "O" in the city of Lubbock; that Richardson was with him, and two other men whom she did not know. Appellant objected on the ground that the only purpose of the testimony could be to corroborate the witness Ross, and instead of that it showed to be contradictory of Ross' testimony as to where he was at the time. There seems to be no merit in the bill. The objection appears to go to the weight rather than to the ad-

missibility of the evidence. Furthermore, we observe that substantially this same testimony from the witness Alva Vaughn went into the record without objection. Wagner v. State, 53 Texas Crim. Rep., 306, 109 S. W., 169; Machado v. State, 112 Texas Crim. Rep., 538, 17 S. W. (2d) 1060, in which are collated many authorities.

Appellant asks us to again review the record incident to his motion for change of venue, insisting that in our original opinion we reached a wrong conclusion regarding the matter. The record is voluminous on the point. The bill of exception which contains the oral testimony heard on the motion contains 100 pages of typewritten matter, in addition to which 27 exhibits containing various newspaper articles are brought forward. Manifestly, the opinion can not set out all these things; if so, it would occupy the greater part of a volume of our reports. The best we can do, and all that ought to be expected, is to use our utmost effort to fairly analyze such a record and state our conclusions. In our original opinion this was undertaken to be done. A further examination of the question leads us to say that we discover no error in the conclusion then reached. In some respects the present case, upon the question under consideration, is unlike any other to which our attention has been called. The newspaper articles upon which appellant particularly relies as calculated to engender prejudice against him were not published until after the special venire in this case had been drawn, and during the trial of appellant's codefendants whose cases were tried first. The learned trial judge used every effort to guard against any injury which might possibly result from anticipated newspaper accounts of these trials by admonishing the venire in this case when excused until a later date not to read accounts of such trials if the papers should contain them. Presumably, the veniremen were governed by the court's instructions regarding the matter. The record contains no information which would advise this court that they did not do so. The trial court was justly of the opinion that developments during the examination of the veniremen would throw light on the matter, and properly, we think, exercised his discretion in overruling the motion upon conflicting evidence. After the venire was examined the motion for change of venue was not renewed. If anything developed during examination of veniremen which would indicate that the trial court had abused his discretion we find nothing in the record apprising us thereof. That the court may look to such examination as throwing light upon the question of whether the venue should have been changed is apparent from

Grace v. State, 90 Texas Crim. Rep., 329, 234 S. W., 541. From the present record, even more than in the case mentioned, a showing of the difficulty, or otherwise, in obtaining the jury would have greatly aided this court in reviewing the action of the trial court where the question turns upon the proper exercise of his discretion.

Entertaining the view that our original opinion properly disposed of the case, the motion for rehearing will be overruled.

*Overruled.*