## GEO. DEAN, ALIAS D. B. DEAN, v. THE STATE.

### No. 2931.   Decided November 2, 1904.

**1.—Murder—Continuance—Second Application.**

Where upon a contest over a second application for continuance, it is shown that the absent witnesses would not have testified as appellant insisted, had they been present, there was no error in overruling the application.

**2.—Same—Evidence—Impeaching Witness.**

Where upon trial, the State's witness contradicted his testimony taken at the inquest, and upon cross-examination admitted that he did so, there was no error in refusing to admit the written testimony of the witness at said inquest. Following Walker v. State, 17 Texas Crim. App., 16. It is only where there is a denial, direct or qualified by the witness of his former statement that proof of same can be introduced. Following Rodrigues v. State, 23 Texas Crim. Rep., 503; Hyden v. State, 31 Texas Crim. Rep., 401.

**3.—Same—Party Cannot Corroborate his Witness When Not Attacked.**

A party cannot corroborate his own witness, by showing that his testimony before the coroner's inquest and before the grand jury was the same as on the trial, the credibility of the witness not being attacked.

**4.—Same—Argument of Counsel.**

Where in a trial for murder, the defendant did not tender to the court a special charge, asking the jury to disregard the objectionable statement of State's counsel in his address to the jury, the same will not be considered.

**5.—Same—Charge of the Court—Defense of Property.**

Where the evidence showed that the deceased was not in the act of taking·the horse over which the dispute arose, when defendant shot him, there was no error in failing to charge on defense of property under article 680, Penal Code.

**6.—Same—Charge of the Court—Manslaughter.**

Where the evidence did not raise the issue of manslaughter, but rather raised the issue of self-defense, and the court charged both on self-defense and manslaughter, there was no error even if the latter charge did not instruct the jury directly, but indirectly, that they could look to the facts and circumstances in evidence which might shed light upon the provocation at the time of the homicide producing adequate cause.

Appeal from the District Court of Smith. Tried below before Hon. R. W. Simpson.

Appeal from a conviction of murder in the second degree; penalty, twelve years imprisonment in the penitentiary.

The opinion states the case.

*T. O. Woldert,* for appellant.— Where testimony of a witness taken before an inquest proceeding, or at an examining trial, is totally at variance with his evidence on the final trial, such written testimony is admissible for the purpose of impeaching the witness. Jackson v. State, 33 Texas Crim. Rep., 281.

Where the testimony of a witness is attacked by the contradictory testimony of another witness and his credibility thereby assailed, he may corroborate his present testimony by testifying that he had so testified before the grand jury. Joe Goode v. State, 32 Texas Crim. Rep., 505; Weaver v. State, 65 S. W. Rep., 534.

The court erred in not setting the verdict aside because of the intemperate, improper and vehement remarks of counsel for the State in closing the argument as follows: "No wonder we have mob law in this State, when counsel for defendant came in here and made such a speech as Woldert made." Howell v. State, 57 S. W. Rep., 835; Lilley v. State, 22 Texas Crim. App., 1.

Where it may not justify the taking of human life, an attack on one's property, or property in one's possession, is justly regarded as a great provocation and constituting adequate cause, and especially so when accompanied with such aggravating circumstances as might well be calculated to arouse the passion and resentment of a person of ordinary courage and spirit; and to such state of case the charge of the court should certainly apply the law of manslaughter more specially than in the general terms of the statute. Logan Milrainey v. State, 33 Texas Crim. Rep., 577; Ledbetter v. State, 26 Texas Crim. App., 22; Manly v. State, 26 Texas Crim. App., 274; Brookin v. State, 27 Texas Crim. App., 701; Oman v. State, 24 Texas Crim. App., 495.

On the proposition of adequate cause, the appellant in his motion for rehearing cited: Miles v. State, 18 Texas Crim. App., 156; Johnson v. State, 22 id., 206; Howard v. State, 23 id., 265; Bracken v. State, 29 id., 362.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of twelve years. The former appeal of this case is reported in 8 Texas Ct. Rep., 958.

Bill number 1 complains of the court's refusal to grant appellant's second application for continuance. We find in the record a strong contest filed by the State to said motion. In the light of the State's contest we think the court did not err in overruling the same, since the contest shows that said witnesses would not have testified as appellant insists in his motion had they been present.

The second bill complains of the failure of the court to permit appellant to introduce in evidence Chilton Brown's testimony taken at the inquest. The bill shows that Brown was a State's witness and testified different from his testimony at the inquest. The inquest testimony was favorable to defendant. The court approved the bill with the following qualification: "The attorney for the defendant took the inquest testimony of the witness and asked him if he did not swear as it was therein written in the inquest trial, reading his testimony over to him. Witness answered that he did. Then counsel offered the original testimony as set out in the bill, and the court sustained the State's objection, because witness had admitted that he had so testified and did not attempt to deny it. There was no error in the ruling of the court. When a witness confesses to have made contradictory statements and admits what they were, evidence as to said contradiction is not admissible. Walker v. State, 17 Texas Crim. App., 16. It is only where there is a denial, direct or qualified by the witness of his former statement that proof of said former statement can be introduced. Rodriquez v. State, 23 Texas Crim. Rep., 503; Hyden v. State, 31 Texas Crim. Rep., 401.

The third bill complains of the action of the court refusing to permit appellant to corroborate his witness, Ella Lacy, by showing that her testimony before the coroner's inquest and before the grand jury was the same as on this trial. The court qualifies this bill with the statement that the court excluded the testimony because it was an attempt to corroborate his witness without her credibility being in any manner attacked by the State. There was no error in the ruling of the court in excluding the testimony.

The fourth bill complains of the following argument of the county attorney made to the jury: "No wonder we have mob law in this State, when counsel for defendant come in here and make such speech as Woldert (attorney for defendant) made. Defendant then and there ex-

cepted to the language of said attorney. Whereupon the court told the jury not to regard the observation of said county attorney. To which language of the county attorney defendant excepted. The bill is approved with this statement: That the county attorney, when he made the statement above, was answering a proposition of law relative to defendant's right, which he (county attorney) contended was fallacious and dangerous." Defendant's attorney asked no special charge instructing the jury to disregard the statement. The bill does not show what language the county attorney alluded to that appellant's counsel had used. We cannot say it was not a pertinent retort to the language he used. At any rate, he did not tender to the court a special charge, asking the jury to disregard the statement. We cannot say there was error in the ruling of the court.

Bill number 5 complains of the argument of the county attorney, who was assisting the district attorney in using the following language: "Gentlemen of the Jury—why, even if the theory of Woldert (defendant's attorney) is true, defendant had no right to keep that horse in his lot against the consent of the deceased. Heard had a right to go and get him. If his theory is true, defendant came by him in an illegal transaction. It was a gambling contract and could not be enforced." We find no special charge asked by appellant instructing the jury to disregard this argument. Furthermore we do not see how or in what manner it could or did injure the rights of defendant. The evidence seems to support the county attorney's statement that the horse had been won in a gambling transaction.

Appellant insists in his motion for new trial, among other things, that the court should have charged Article 680, Penal Code, which authorizes the defense of property. The evidence in this case does not raise this issue, since deceased at the time he was shot was not in the act of taking the horse. Deceased had merely informed appellant that he was going to take the horse. The various other errors assigned are not well taken. The charge of the court is practically the same as that given on the former trial. There is no error in the record. The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

#### December 20, 1904.

HENDERSON, JUDGE.—This case was affirmed at a former day of this term, and now comes before us on motion for rehearing. Appellant's principal ground of the motion is, because, as he claims, the court committed an error in the charge on manslaughter, which he says was not treated in the original opinion. In order to present this question we will state enough of the testimony, both for the State and the defendant, as may have a possible bearing on this matter. The evidence on the part of the State presents a case of murder, and certainly suggests nothing below murder in the second degree. Chilton Brown, who

was the principal witness for the State, testified substantially that they had had a game of cards during the day, in which deceased, himself and Speal and defendant seem to have engaged. Deceased had a $10 bill; Brown had won 25 cents of the sum, and Speal had $3.00 in it. It was originally Heard's $10. It appears it was lying on the blanket between the parties when they quit playing. It disappeared. Heard was charged with having it. The other parties claimed their share of it. The bill was not produced. The parties left there, were gone some little time, and after night returned to the house where they were playing, and appellant met them in the yard and told Heard to pay the parties their money out of the bill. Heard said he did not have it. Appellant then went in the house, got his gun, came out, and told Heard he was going to kill him if he did not pay Speal his money. Witness told him not to kill Heard, that he said he would pay the money in the morning. Appellant said, no, if he did not pay it then he would kill him. Heard was then standing by a stump picking on it with his fingers, and said to appellant, "If you are going to kill me, you will have to do it," and then appellant shot him. Appellant said he was going in the house and kill Alice Jernigan, a woman there, because she would give him away; and witness and Speal prevented him from carrying out his threat; that he then told witness, Speal and others, what to say about how the difficulty occurred. This witness admits that on the inquest proceeding he swore to the statement as suggested by appellant; and that this was not true; that the facts are as related by him above. The statement, which he says was fabricated, is in effect the same statement testified by the witness Ella Lacy, who gave evidence on behalf of appellant. She testified substantially, that the killing occurred at night. Speal, Brown, Anna Dean and Alice Jernigan were there. She testified that in the morning, at the same house, appellant's house, Speal, Brown and Heard got into a game of five-up and played until in the afternoon; that appellant did not play five-up; that he left the place, and was gone awhile, and after he got back Heard (deceased) asked him to gamble with him, and appellant stated he did not play five-up. Deceased said, "What is your game?" And appellant said, coon-can. Deceased and appellant then played coon-can. Appellant won a ten dollar bill from deceased. Heard had gotten the $10 from Alice Jernigan. After appellant had won the $10, deceased agreed to give him a horse to stand good for his $10, until the next morning, if appellant would lend him $10. Appellant agreed to it, and then deceased put his horse in Dean's lot, and brought the saddle and bridle in the house, and put it under the bed. It was understood that the horse, bridle and saddle were to stand good for the $10. This was about 4 o'clock in the afternoon. After this, deceased and appellant went to playing coon-can again; and appellant won $9 out of $10, and Heard jerked it up, and said, "I want my horse." Appellant said, "You can't get your horse until you pay me my money." Heard said, "Just wait till I get back; I will get my horse or get you." Deceased went off. It seems the other

parties left the house, but returned a little after night, except Heard who was not with the other parties. After appellant and the others, except deceased had come back, appellant took his gun and went outdoors, saying deceased might shoot him through the crack; "that he liked to got shot that very way once." In a little while she heard deceased call appellant, who answered. Then deceased said, "I want my horse." Appellant said, "You can't get your horse until I get my money;" and then, according to the witness, she heard something go "click, click, click" (witness indicating the snapping of a gun) and the gun fired. Appellant came in the house, and said he had killed deceased Heard. She denies that he tried to kill Alice Jernigan after he came back in the house; and that Speal and Brown interfered to prevent him. It was also shown by a witness who came to the place next morning, the dead body of deceased Heard was lying out in the yard where he was shot, and he had a pistol in his right hand; that the barrel of it seemed to be lying on a chip and one cartridge was out under his hand, and there were two loaded cartridges in this pistol, both of which appeared to have been snapped. Appellant also showed by a witness that the State's witness Brown had sworn at a previous trial that, after appellant shot deceased he tried to get him and Speal to put the pistol in deceased's hand. This testimony was introduced for the purpose of impeaching the State's witness Brown, who testified on this trial that he had never so sworn.

On this state of case the court charged on murder in the second degree (appellant having been previously acquitted of murder in the first degree), on manslaughter and on self-defense. After giving the ordinary statutory definitions of manslaughter, the court, in applying the law to the facts instructed the jury, as follows: "So, if you find from the evidence, beyond a reasonable doubt, that defendant in Smith County, Texas, about February 21, 1903, did voluntarily shoot with a gun and kill William Heard, then if you shall find from the evidence that the deceased William Heard came to the home of defendant with or without a pistol after dark, and stopped in the front yard, or if he snapped a pistol, if any he had, at defendant, and that such acts, if any, aroused in the mind of defendant such a degree of anger, rage, sudden resentment or terror as rendered it incapable of cool reflection, and in such condition he shot and killed William Heard; or if, on the occasion in question, there existed any condition or circumstance which was capable of creating and which did create in the mind of defendant such a degree of anger, rage, sudden resentment or terror which rendered it incapable of cool reflection, and if in such condition he shot and killed William Heard, then such killing, if not justifiable under succeeding instructions, will be manslaughter, and you will so find," etc. In the motion for new trial appellant made the following criticism to said charge: "The court erred in not charging upon every phase of the case as made by the evidence on manslaughter, in that, from the testimony of Ella Lacy, it was the avowed purpose of deceased to attack, or recover cer-

tain property, to wit: a horse in defendant's lot and saddle and bridle in defendant's house, placed there by deceased as a pledge or pawn to secure a loan, which evidence required of the court a charge specifically that if the threats to recover the property and the subsequent return of the deceased to get the property, 'or get you' (defendant) aroused the passion of the accused to such an extent as to render him incapable of cool reflection, such threats and the subsequent return of defendant would constitute adequate cause." We understand the insistence of appellant to be, that the court nowhere instructed the jury that while the provocation must arise at the time of the homicide, they could look to all the facts and circumstances in evidence, in order to determine whether or not the provocation at the time was sufficient to constitute adequate cause. And further that the court in the charge as given, grouped some of the facts, but omitted to state others which appellant urges were a part of the facts and were material as serving to intensify the provocation at the time. In the first place, we are of opinion, that manslaughter is not in the case. It can not be urged that it arose from any testimony introduced by the State; that shows an unprovoked murder. Does appellant's testimony present that issue? The witness Ella Lacy was not out in the yard at the time of the homicide. What she testified to was from her position in the house. She heard deceased say, "I have come after my horse." Appellant replied, "You can't get your horse until I get my money." Then she states she heard something go "click, click, click," like the snapping of a gun, and then she heard the gun fire. Now, if this testimony indicates anything, it indicates self-defense on the part of appellant,—if it be conceded that what she heard like the snapping of a gun, came from deceased, and was the snapping of his pistol at appellant who had just before told deceased he could not get his horse, it indicates clearly self-defense. We think if a theory favorable to appellant can be drawn from this testimony, it is that deceased attempted to shoot appellant with a pistol, which was found by his body, and found to have been snapped, and that appellant then shot him. The court gave a full and complete charge on self-defense, which, although appellant excepted to, yet, in our view was a complete and adequate charge on that subject. So that, in our opinion, the charge on self-defense, was responsive to appellant's testimony. We believe, in order to create manslaughter out of the testimony of the witness Ella Lacy, it is necessary to indulge in some surmise or supposition. Possibly that deceased did not draw his pistol on defendant, and did not snap it at him, as apparently testified by said witness; but, in the darkness, appellant knowing deceased had gone off for a weapon, and had come back determined to get his horse, became excited, when he saw deceased returning, and when he asked for his horse, and before he made any hostile demonstration, shot him down, not in his necessary self-defense, but under excitement produced by the circumstances, which rendered him incapable of cool reflection. If we are to assume this state of case, still we believe the court's charge sufficiently presented

this matter. The court instructed the jury that if deceased (Heard) came to the home of defendant, with or without a pistol, after dark, and stopped in the front yard, and on that account appellant's mind was excited and he was rendered incapable of cool reflection and shot him, it would be manslaughter; or if deceased came to the home of appellant with a pistol after dark and snapped it at defendant, and that on such account appellant's mind was excited and he was rendered incapable of cool reflection, it would be no more than manslaughter. Or if on the occasion in question, on account of any condition or circumstance, which was capable of creating and which did create in the mind of the defendant, passion which rendered him incapable of cool reflection, and he shot and killed deceased, it would be no more than manslaughter. That is, the effect of the charge was to instruct the jury that each of these matters would afford adequate cause; and in our opinion covered the entire case. The latter instruction in effect told the jury that any condition or circumstance which was capable of creating and which did create in the mind of the defendant passion which rendered him incapable of cool reflection, would be adequate cause. In our opinion, this did not restrict the jury from looking through the whole case, to any condition or circumstance in evidence which shed light upon any provocation occurring at the time, which might engender passion and so render the mind of defendant incapable of cool reflection. We do not believe that the charge confused or misled the jury, and if it be conceded that they were not directly told that they could look to the facts and circumstances in evidence which might shed light upon the provocation at the time, this was not calculated to injure appellant. So under article 723, Code Criminal Procedure, it would not operate a reversal of this case. In this discussion, we have assumed that manslaughter was in the case; but as before stated, we do not believe the evidence presents this question. As stated heretofore the charge on self-defense adequately guarded all of appellant's rights on that subject, and the criticisms of appellant are not well taken. The motion for rehearing is accordingly overruled.

*Overruled.*

Brooks, Judge, absent.