### TOM BANKS v. THE STATE.

#### No. 4160. Decided February 12, 1908.

**1.—Murder—Conspiracy—Evidence—Declaration of Co-Conspirator.**

Upon trial for murder, there was no error in admitting the declaration of a co-conspirator to the effect that the deceased was getting too G—d d—d smart in accusing his boy of stealing a coat, and if he did not take it back, by G—d, he intended to kill him, the record showing that defendant and his co-conspirator had entered into a conspiracy; and this, although the conspiracy was shown after this testimony was introduced.

**2.—Same—Charge of Court—Limiting Testimony.**

Where upon trial for murder, the court properly limited according to approved precedent impeaching testimony to the credibility of the witness involved, there was no error. Following Winn v. State, 34 Texas Crim. Rep., 37; Dean v. State, 47 Texas Crim. Rep., 243; Elkins v. State, 48 Texas Crim. Rep., 205.

**3.—Same—Charge of Court—Principals.**

Where upon trial for murder the evidence showed declarations by defendant showing ill-will towards the deceased, and proximity to the homicide, etc., the charge on the law of principal was justified.

**4.—Same—Charge of Court—Conspiracy—Principals.**

Upon trial for murder where there was evidence of a conspiracy, there was no error in the court's qualification of defendant's special instruction, to the effect that the declaration of a codefendant threatening deceased could not be taken against defendant, unless defendant and said codefendant had entered into an agreement to kill the deceased.

Appeal from the District Court of San Jacinto. Tried below before the Hon. L. B. Hightower.

Appeal from a conviction of murder in the first degree; penalty, life term imprisonment in the penitentiary.

The opinion states the case.

*Dean, Humphrey & Powell,* for appellant.—On question of limiting testimony to credibility of witness in court's charge, cases cited in opinion: Green v. State, 49 Texas Crim. Rep., 645; 98 S. W. Rep., 1064. On question of admitting statements of co-conspirators: Chapman v. State, 45 Texas Crim. Rep., 479; 43 Texas Crim. Rep., 328; 76 S. W. Rep.; 477; Wallace v. State, 46 Texas Crim. Rep., 341; 81 S. W. Rep.;

966; Nelson v. State, 48 Texas Crim. Rep., 374; 87 S. W. Rep., 143; Cooper v. State, 48 Texas Crim. Rep., 608; 89 S. W. Rep., 816. On question of charge on principals: Marshall v. State, 40 Texas, 200; Francis v. State, 7 Texas Crim. App., 501. Upon question of qualifying special charge: Dobbs v. State, 51 Texas Crim. Rep., 113; 100 S. W. Rep., 946.

*F. J. McCord,* Assistant Attorney-General, for the State.—On question of conspiracy: Burris v. State, 34 Texas Crim. Rep., 387; Hannon v. State, 5 Texas Crim. App., 549; McKenzie v. State, 32 Texas Crim. Rep., 568; Blain v. State, 33 Texas Crim. Rep., 236; Donnegan v. State, 39 Texas Crim. Rep., 115; Cox v. State, 8 Texas Crim. App., 254; Hardin v. State, 4 Texas Crim. App., 355; Baker v. State, 7 Texas Crim. App., 612; Smith v. State, 21 Texas Crim. App., 96; Loggins v. State, 8 Texas Crim. App., 434.

DAVIDSON, PRESIDING JUDGE.—Appellant was charged with killing J. L. Palmer, his punishment being assessed at life imprisonment in the penitentiary.

The witness Whitley testified as to the facts of the killing, that just before the killing of Palmer he heard a conversation between Tom Banks (appellant), John Crabb and Dolive, in which Dolive said, "Boys, there is one or two things we have got to do. We have either got to kill old man John Palmer, Gus and Buddy, or we will have to move," and John Crabb said, "By God, we will not move. We are the boys that can do the work." That they were standing then about the middle of Dolive's store. Dolive and Crabb were brothers-in-law. The witness had gone in there to purchase some meal. The same witness testified that he had a conversation with John Crabb in which Crabb stated, "Buddy," referring to deceased, was getting too God damned smart; he accused his boy of stealing a coat, and if he did not take it back by God he intended to kill him. That this conversation occurred a short time, perhaps four or five days, before the conversation previously referred to as having occurred in the store where Dolive, Crabb and appellant were. The previous conversation is again testified to in this shape; that Dolive said to John Crabb, in the presence of appellant, "Boys, there is one of two things we have got to do. We have got to kill old man Palmer, Gus and Buddy, or we will have to move." John Crabb said, "By God, we will not move. We are the ones that can do it, ain't we, Tom?" Tom (appellant) did not say anything that the witness heard. The witness Sheppard was in company with Whitley, but did not hear the conversation, he having stopped out in front of the store, but saw the parties standing back there. The witness Gates testified a few days before the homicide defendant, Tom Banks, told him that he had found "that Buddy was a God damned rascal, and if he wanted to he could go and tell him so." He further testified there was some trouble between appellant and deceased. This witness

further testified: "I can't imagine why Tom Banks would have started such a mess; him and Buddy Palmer, during the whisky times down there had been average good friends. I said, 'My goodness, it seems to me, Banks, I could not talk that way,' and he said, 'You can go and tell him.' Tom remembers it." The witness Standley stated that deceased was standing in front of McGar's store about ten feet from the gallery when the witness first saw him after the gun fired. Deceased went toward the house, came inside where witness was, and said John Crabb had shot him and he was going to die. Deceased immediately fell and lived four or five minutes. This witness described the wound. Wyatt testified that he was standing about ten feet from Dolive's store when the gun fired; looked in and could see Tom Banks and John Crabb; they were down by the window on the side next to McGar's store. They were near a window; that is, John Crabb and Tom Banks. When the gun fired he could see the smoke; could see it outside. "It was about four feet from the window. After the shot fired I went from there. After the shot I looked and saw Bill Smith; he came to the front door and Banks and John Crabb were back up near the window. Smith was along up towards the door. To my best recollection Crabb had a gun; both were standing there about two feet apart. I went from there to McGar's store." There is quite a lot of testimony going to show that the shot was fired from the west window of Dolive's store through the window at a point where one of the window panes was out, and the testimony seems to be practically that there were only three parties in the store at the time of the shooting: Smith, appellant and Crabb; and the State's evidence places Crabb and appellant together at the window immediately after the gun fired, with Smith near the front part of the store, and the indications from the testimony inferentially are that Crabb fired the shot. There was considerable testimony of a more or less impeaching character. The witness Smith was placed upon the stand, but did not seem to know anything, and evidence was introduced showing that his statement at examination trial or coroner's inquest was materially different from what it was upon this trial. Bill of exceptions was reserved to the introduction of some of the testimony of the witness Whitley. Perhaps it is better to copy enough of the bill to make it intelligible: "Q. Now, sometime before the killing did you have a talk with John Crabb; did you hear John Crabb make any remarks about Buddy Palmer? A. I did, sir. Q. Where were you at that time? A. I was in his store. Q. What did he say? A. He said, Buddy was getting too God damn smart; he accused his boy of stealing a coat and if he did not take it back, by God, he intended to kill him. Q. About how long, how many days was that before Buddy Palmer was killed? A. I could not be exact about that, but it could not have been over ten or fifteen days. Q. What was it John Crabb said Buddy had been accusing his boy of? A. Stealing a coat." The defendant on cross-examination asked of said witness, whether defendant, Tom Banks, was present at the time and place of said alleged con-

versation between the witness and said Crabb, to which said witness replied that the defendant, Tom Banks, was not present, whereupon the defendant moved the court to exclude said testimony on the ground that the statement of said J. L. Crabb was not made in the presence of defendant, and not shown to be by his authority or pursuant to any agreement entered into between the said Crabb and defendant to take the life of the deceased, J. L. Palmer; was immaterial and inadmissible in evidence. The court overruled the exception, and the testimony was allowed to remain before the jury on the promise and undertaking of the State thereafter to show by other testimony that the defendant and the said Crabb had entered into a conspiracy to take the life of the deceased. This condition is shown and the acting together by the parties was sufficiently shown, and no error is made to appear.

The court gave the following instruction: "You are further instructed that the testimony of the witness, F. O. Fuller, as to what he testified he heard the witness, W. A. J. Smith, testify to before the examining court soon after the killing of J. L. Palmer as to the place or position the defendant was at in the store of Dolive at the time the fatal shot was fired, and as to where the gun was fired, was allowed to go before you, not as criminative evidence against the defendant, but for the bearing it might have upon the credibility of the said W. A. J. Smith as a witness in this case, and must not be considered by the jury for any purpose except as the said testimony may bear upon the credibility of the said witness Smith." This charge is criticised as being on the weight of evidence, and calculated to impress the jury with the belief that the court thought the testimony of Fuller was entitled to weight by them in determining the credibility of Smith. We believe this charge sufficiently states the law, and is in accordance with prior decisions of this court. See Winn v. State, 34 Texas Crim. Rep., 37; Dean v. State, 47 Texas Crim. Rep., 243; 77 S. W. Rep., 803; and Elkins v. State, 48 Texas Crim. Rep., 205; 87 S. W. Rep., 149.

The court instructed the jury with regard to principals, which was objected to because there was no evidence warranting the submission to the jury of the question of principals. Also the court charged the jury, "Any person who advises or agrees to the commission of an offense and who is present when the same is committed is a principal thereto, whether he aids or not in the illegal act." The main attack upon the court's charge, in regard to the law of principals, is that the evidence did not justify the submission of that theory. We have already stated some of the principal features of the facts relied upon by the State; and in addition, we might further state that Dolive and Crabb were seen going together the morning preceding the killing, to Dolive's store, one of them having a gun. That subsequently, on the same morning, appellant went to the store, and some twenty or thirty minutes prior to the homicide, Dolive went over to the residence of Dr. Aden to answer a call over long distance telephone, leaving Smith, Crabb and appellant in the store. That Smith says he was up on the gallery; other witnesses

place him on the inside of the store, but he also places appellant separated from Crabb, but did not know who fired the shot, and in fact all of his answers before the jury indicated that he did not know anything about it, particularly one way or the other. But it is further in evidence that deceased was killed by a gun discharged from this window; that the gun was there in the store, and was carried back by one of the witnesses and placed on the bed. That one barrel had recently been discharged, and the other was clean. By one of the witnesses, also that as the shot fired he looked up, being in front of Dolive's store, and saw appellant and Crabb together bent down at the window through which the shot had been fired. There is much testimony showing that the gun was discharged from this window, and about smoke being just outside and inside of the house, and other questions of that sort, and it was also shown that these parties remained in that house pretty much the balance of the day; of course, appellant being one of the parties in the house. They exercised sufficient discretion not to talk or say anything about the shooting. If this testimony is to be believed, and the jury seemed to have credited it, taken in connection with what had occurred in the conversation showing ill-will, etc., previously testified as occurring in the store when Dolive, Crabb and others were present, and remarks of appellant himself showing ill-will towards deceased, his proximity to the deceased, in which he saw the witness at the window, and his conduct during the day in the store as above stated, in our opinion, justified the court in submitting the law of principals, and that appellant's objections to these charges are not well founded.

Appellant requested several charges, some of which were given by the court; one of them with a qualification. The charge and qualification are as follows: "You are instructed to disregard and not to consider for any purpose the testimony of the witness, John Whitley, as to the alleged statements made by J. L. Crabb to said witness in the store of the said Crabb, the testimony of the said witness showing that the defendant Tom Banks was not present at the time said alleged statement was made." The court thus qualifies, to be read after the above *typewritten instruction*: "Unless you should find and believe from the evidence beyond a reasonable doubt that the defendant and Crabb, or defendant and Crabb and others had entered into an agreement to kill deceased." This qualification, under the facts adduced, we think, is not error. If appellant entered into a conspiracy with Crabb and Dolive to take the life of deceased, and thereafter he acting with Crabb killed the deceased, or if he was present at the time Crabb killed him, if Crabb did fire the fatal shot, knowing his unlawful purpose and in any way aided him or encouraged him, he would be guilty as a principal, and with the preparation made for the killing and manner of the killing he could not have been a principal without some knowledge of the fact that deceased was to be killed before the shot was fired under the facts of this case.

It is also urged the evidence is not sufficient. Without repeating the

testimony or making any additional statements to those made, we are of opinion that the jury were warranted in coming to the conclusion they arrived at by their verdict.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

[Motion for rehearing overruled, March 20, 1908, without written opinion.—Reporter.]